IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0386
════════════
 
Providence Health Center 
a/k/a Daughters of Charity Health Services of Waco and DePaul 
Center a/k/a Daughters of Charity 
Health Services of Waco, Petitioners, 
 
v.
 
Jimmy and Carolyn Dowell, 
Individually and on Behalf of the Estate of Jonathan Lance Dowell, 
Deceased,
Respondents
 
-consolidated 
with-
 
════════════
No. 05-0788
════════════
 
James C. Pettit, 
D.O.,
Petitioner,
 
v.
 
Jimmy and Carolyn Dowell, 
Individually and on Behalf of the Estate of Jonathan Lance Dowell, 
Deceased,
Respondents
 
════════════════════════════════════════════════════
On Petitions for Review from the
Court of Appeals for the Tenth District of 
Texas
════════════════════════════════════════════════════
 
            
Justice Wainwright, 
concurring in part and dissenting in part.
 
            
The Court holds that there was legally insufficient evidence that the 
conduct of Providence Health Center, DePaul Center, and Dr. Pettit (collectively the defendants) caused Lance Dowell’s suicide. I 
hesitate to join the Court’s opinion as there seems to be some unchallenged 
evidence that the health care providers’ breach of duty was a causative agent. I 
write separately because the trial court erred in failing to include Lance in 
the negligence and proportionate responsibility questions. I therefore concur in 
the Court’s holding reversing the judgments of the court of appeals, but would 
remand to the trial court for a new trial. 
            
After their son Lance’s unfortunate suicide, Carolyn and Jimmy Dowell 
(the Dowells) sued the defendants for wrongful death 
damages and for survival damages on behalf of Lance’s estate, alleging that 
Lance received negligent health-related services and that the defendants 
departed from accepted standards of medical care. The Dowells asserted that the defendants’ failure to properly 
evaluate and retain Lance in the DePaul facility caused his death. The trial 
court submitted the negligence of Providence, DePaul, and Dr. Pettit to the jury 
but did not include Lance or his parents in the submission. The defendants 
objected to the omission of Lance and his parents from the negligence and 
proportionate responsibility questions. The jury found that all three defendants 
were negligent and that their negligence proximately caused Lance’s suicide. In 
apportioning responsibility, the jury found Dr. Pettit twenty percent liable, 
Providence forty 
percent liable, and DePaul forty percent liable. The jury awarded $400,000 in 
wrongful death damages and $400,000 in survival damages. The court of appeals 
affirmed.
            
The defendants assert that it was erroneous for the trial court to 
exclude Lance and his parents from the questions in the jury charge. I conclude 
that although it was not error to exclude the Dowells, 
it was error for the trial court to refuse to include Lance in the negligence 
and proportionate responsibility questions.
            
A reviewing court may reverse and remand for a new trial based on an 
alleged error in a jury charge only if such error “was reasonably calculated and 
probably did cause the rendition of an improper judgment.” Island 
Recreational Dev. Corp. v. Republic of Tex. Sav. Ass’n, 710 S.W.2d 551, 555 (Tex. 1986); see also Sterling Trust Co. v. Adderley, 168 S.W.3d 835, 843 (Tex. 2005); Reinhart v. Young, 906 S.W.2d 471, 473 
(Tex. 1995). 
To make this determination, the reviewing court should consider “the pleadings 
of the parties, the evidence presented at trial, and the charge in its 
entirety.” Island Recreational Dev. Corp., 710 S.W.2d 
at 555.
            
The defendants first argue that they submitted evidence of the Dowells’ negligence and that such evidence entitled them to 
a jury question regarding the Dowells’ negligence and 
proportionate responsibility. Specifically, the defendants point to the failure 
of the Dowells to remain with Lance in the thirty-six 
hours between his discharge and suicide, despite Nurse Fox’s instruction to do 
so. Generally, however, there is no duty to control the conduct of third 
persons. See Greater Houston Transp. Co. v. 
Phillips, 801 S.W.2d 523, 525 (Tex. 1990). Although 
there is an exception to this rule when a special relationship exists, including 
between a parent and child, see id., a child is understood to be a “a 
person under 18 years of age who is not and has not been married.” See 
Tex. Fam. Code 
§ 101.003. As an adult, 
Lance was not under the legal control or supervision of his parents. A lack of 
action on the part of the Dowells could not constitute 
contributory negligence in the absence of some legal duty. See Thapar v. Zezulka, 994 S.W.2d 
635, 637–39 (Tex. 1999) (holding a mental-health 
professional owes no duty to warn third parties of a patient’s threats in the 
absence of a doctor-patient relationship with the third parties). Therefore, the 
trial court did not err in refusing to submit a question on the Dowells’ negligence and proportionate responsibility.
            
Next, the defendants argue that Lance was negligent in failing to follow 
his discharge instructions, and that his negligence should have been submitted 
to the jury. The Dowells respond that the Legislature 
has specifically prohibited juries from considering the negligence of people who 
commit suicide. Section 93.001 of the Texas Civil Practice and Remedies Code 
provides that in a civil action for personal injury or death, “if [a person’s] 
suicide or attempted suicide was caused in whole or in part by a failure on the 
part of any defendant to comply with an applicable legal standard, then such 
suicide or attempted suicide shall not be a defense.” See 
also Kassen v. Hatley, 
887 S.W.2d 4, 12 (Tex. 1994). Applying the statute to 
this case means that Lance’s conduct in committing suicide could not be 
considered by the jury. See Dallas County MHMR v. Bossley, 968 S.W.2d 339, 346 (Tex. 1998) (Abbott, J., 
dissenting); Kassen, 887 S.W.2d at 12. 

            
The Dowells argue that since the defendants do 
not contest the finding of their breach of the standard of care, a jury could 
not consider any of Lance’s conduct. The statute, however, does not say that all 
acts of a deceased cannot be considered by a jury when determining proportionate 
responsibility for causing the injuries in a case. Rather, upon finding that the 
defendants breached an applicable legal standard, the statute precludes the 
“suicide or attempted suicide” from being an affirmative defense. Tex. Civ. Prac. & Rem. 
Code § 93.001. 
            
This raises the question: Under what circumstances and in what light may 
Lance’s actions be considered by the jury? Chapter 33 of the Texas Civil 
Practice and Remedies Code requires proportioning of damages among responsible 
parties. Section 33.003 specifies that a jury “shall determine the percentage of 
responsibility . . . with respect to each person’s causing or contributing to 
cause in any way the harm for which recovery of damages is sought, whether by 
negligent act or omission, by any defective or unreasonably dangerous product, 
by other conduct or activity that violates an applicable legal standard, or by 
any combination of these.” Tex. Civ. 
Prac. & Rem. Code § 
33.003. The jury is to make this determination for all 
claimants, defendants, and responsible third parties, where evidence has been 
submitted to support such a question. Id.; F.F.P. Operating 
Partners, L.P. v. Duenez, 237 S.W.3d 680, 687 
(Tex. 
2007). If Lance’s actions apart from the act of 
committing suicide violated an applicable standard of care (such as negligence), 
a jury should have weighed such actions in assigning proportionate 
responsibility.
            
Before being discharged from the hospital, Lance was instructed by Nurse 
Fox to take a prescribed medication[1] and remain with family members until a 
follow-up examination at the MHMR center in three days. A jury could have 
determined from the evidence submitted that Lance failed to follow those 
instructions and that such failure was a contributing cause of his death. We 
have previously recognized that a patient has a duty to cooperate with treating 
physicians, which includes cooperation both in diagnosis and in treatment. 
Jackson v. Axelrad, 221 S.W.3d 650, 654 
(Tex. 2007); Elbaor v. Smith, 845 S.W.2d 240, 245 
(Tex. 
1992). In Elbaor, we held that the 
failure of a patient to take prescribed antibiotics was evidence of negligence 
that should have been submitted as a question to the jury. Elbaor, 845 S.W.2d at 251. 
We later reaffirmed allowing a jury to consider the conduct of patients when 
determining proportionate responsibility as part of an inclusive comparative 
negligence scheme rather than “compartmentaliz[ing] negligence in rigid categories.” Jackson, 221 S.W.3d at 654.
            
Justice O’Neill’s 
dissent argues that the jury could not have found Lance negligent, based on 
expert testimony that his mental condition impaired his ability to follow 
instructions. While the jury, if asked, may not have found Lance negligent, it 
was the jury’s role and not ours to determine whether Lance’s conduct 
contributed to his harm (and to what degree, if any) or whether Lance’s mental 
state absolved him of responsibility for a portion of the harm. It was not given 
that opportunity. Just as the Dowells were entitled to 
argue to the jury that Lance was not negligent based on his mental condition and 
circumstances, the defendants were entitled to attempt to convince the jury of 
Lance’s negligence and his proportionate responsibility for his death. Although 
this approach charges juries with the subtle task of separating generally 
negligent conduct of the deceased from the conduct involved in commission of the 
suicide, I believe juries, properly selected and guided, are capable of 
accomplishing this nuanced task. See F.F.P. Operating Partners, L.P., 237 
S.W.3d at 693 (citing cases in which juries considered subtle distinctions in 
apportioning damages between intoxicated patrons and dram shops). Contrary to 
Justice O’Neill’s assertion, my position is 
not that “parties that breached the standard of care [should] be absolved from 
liability,” but that, as the Legislature directed, where multiple parties caused 
or contributed to cause harm, each should be held responsible for their 
percentage of responsibility. __ S.W.3d __, __.
            
Failure to include the requested questions was reasonably calculated and 
probably did cause the rendition of an improper verdict. Reinhart, 906 S.W.2d at 473. The trial court should have included Lance 
in the negligence question, with an instruction to the jury, if requested, not 
to consider Lance’s act of suicide in determining whether Lance’s negligence, if 
any, proximately caused his death. Any subsequent finding of Lance’s 
proportionate responsibility would be limited to Lance’s negligence in the first 
question. As the language of the assumption of the risk statute governs all 
“civil action[s] for damages for personal injury or death,” in this case the 
same limitations in the charge for use of the suicide as an affirmative defense 
apply to Carolyn and Jimmy Dowell. See Tex. Civ. Prac. & Rem. 
Code § 93.001. 
Accordingly, I would reverse the court of appeals’ judgments and remand these 
cases to the trial court for a new trial. 
 
            
            
            
            
            
            
________________________________________
            
            
            
            
            
            
J. Dale Wainwright
            
            
            
            
            
            
Justice
 
OPINION 
DELIVERED: May 23, 2008
 
 
 






[1] 
Contrary to the dissent’s suggestion, prescribing medication was part of the 
physician’s treatment of Lance, and there is no evidence that prescribing 
medication to help Lance get much needed sleep was not part of his psychiatric 
treatment.