**Reversed and Rendered and Opinion Filed September 22, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00001-CV

## CITY OF DALLAS, Appellant
## V.
## BILLY ROSS AND GINA WASHINGTON, Appellees

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-17131**

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Carlyle
Opinion by Justice Myers

The City of Dallas brings an interlocutory appeal from the trial court's denial

of its plea to the jurisdiction in a lawsuit filed by Billy Ross and Gina Washington

based on an automobile accident with a police vehicle driven by an officer in the

Dallas Police Department. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

The City brings three issues on appeal contending the trial court erred by denying

the plea to the jurisdiction and that the City is immune from suit because the officer

was entitled to official immunity and because the officer was responding to an

emergency under sections 101.055(2) and 101.062 of the Civil Practice and

Remedies Code. We reverse the trial court's order denying the City's plea to the

jurisdiction and render judgment that appellees' claims are dismissed for lack of jurisdiction.

## BACKGROUND

On the night of January 18, 2019, Dallas Police Department Officer Joshua Arrington was on duty when he received a 9-1-1 dispatch about an officer needing assistance at an automobile accident in the HOV lane on I-635, the LBJ Freeway, in Dallas. Arrington turned on his flashing lights and sirens. He entered the freeway and made his way across the three lanes of the freeway, blowing his air horn repeatedly while moving to the HOV lane. The traffic on the freeway yielded to him. He testified in his affidavit that when he got to the lane next to the HOV lane, he "looked down the HOV lane and stuff," saw a white car that was getting out of the HOV lane, and Arrington sounded his air horn repeatedly. He testified that he "cleared my path" before entering the HOV lane. As he entered the HOV lane, he either struck appellees' car (as appellees alleged) or his car was struck by their car (as Arrington testified).

The Texas Peace Officer's Crash Report Form showed Arrington slowly drove almost perpendicular to traffic across the outer, regular lanes of the freeway. The cars on the freeway's regular lanes stopped to let him through. He was turning right to enter the HOV lane, with the front part of his car in the HOV lane and the back part in the next lane of traffic, when he collided with appellees' vehicle.



Field Diagram - Not to Scale

N

9300 Lyndon B Johnson Freeway
Eastbound (IH 635)

Unit 2

Unit 2

Unit 1

vehicles stopped

Unit 1

(Unit 1 is Arrington's vehicle; Unit 2 is appellees' vehicle.) The report stated the driver of appellees' vehicle (Ross) said he never saw Arrington's vehicle "until it was too late." Arrington testified in his deposition that he did not see appellees' vehicle until the accident.

Appellees sued the City alleging they suffered "serious and disabling personal injuries" and property damage in the collision. They alleged the City's governmental immunity from suit was waived under the Texas Tort Claims Act. The City filed a plea to the jurisdiction, asserting the Texas Tort Claims Act did not waive the City's immunity from suit. Appellees filed a response, and the City filed a reply to the City's response. The trial court held a hearing on the plea to the jurisdiction and denied it.

## IMMUNITY

Sovereign immunity, governmental immunity, and official immunity are separate—but related—matters. Sovereign immunity is a common-law doctrine referring to the sovereign's, i.e., the state's, immunity from liability and from suit. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). Sovereign immunity protects the State as well as its "various provisions of state government, including agencies, boards, hospitals, and universities." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003).

Sovereign immunity also extends to municipalities but is called governmental immunity. *See id.*; *see also Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). For cities, however, governmental immunity only applies to actions taken in the performance of their governmental functions, not from actions taken in their proprietary function. *See Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006); *City of Plano v. Homoky*, 294 S.W.3d 809, 813 (Tex. App.—Dallas 2009, no pet.). One such governmental function is the provision of police protection. CIV. PRAC. § 101.0215(a)(1). In Texas, both sovereign and governmental immunity deprive a trial court of subject matter jurisdiction. *See Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).

The Texas Tort Claims Act waives immunity for "property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if" the damages,

injuries, and death arose from the operation or use of a motor vehicle and "the employee would be personally liable to the claimant according to Texas law." *See* CIV. PRAC. § 101.021(1).

Official immunity protects governmental employees from personal liability. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). "A governmental employee is entitled to official immunity: (1) for the performance of discretionary duties; (2) within the scope of the employee's authority; (3) provided the employee acts in good faith." *Id.* Official immunity is an affirmative defense, and the defendant has the burden to establish all its elements. *Id.*

The City asserted the Texas Tort Claims Act did not waive its immunity to suit because Arrington had official immunity and therefore would not be personally liable to appellees' under Texas law. *See* CIV. PRAC. § 101.021(1)(B); *see also Clark*, 38 S.W.3d at 580 ("When official immunity shields a governmental employee from liability, sovereign immunity shields the governmental employer from vicarious liability."). The City also asserted immunity was not waived because Arrington was responding to an emergency and was acting in compliance with the laws and ordinances applicable to emergency action. *See* CIV. PRAC. §§ 101.055(2), 101.062.

## STANDARD OF REVIEW

Where, as here, the City's plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must review the relevant evidence to determine

whether a fact issue exists. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). After a governmental entity presents evidence that the trial court lacks subject matter jurisdiction, the plaintiff must show there is a disputed material fact regarding the jurisdictional issue. *See Miranda*, 133 S.W.3d at 228. If the evidence raises a fact question on jurisdiction, the trial court cannot grant the plea, and the issue must be resolved by the trier of fact. *Hayes*, 327 S.W.3d at 116. On the other hand, if the evidence is undisputed or fails to raise a fact question, the trial court must rule on the plea as a matter of law. *Id.* This standard generally mirrors the summary judgment standard of Rule of Civil Procedure 166a(c). *Miranda*, 133 S.W.3d at 228.

## ANALYSIS

In its first issue, the City contends generally that the trial court erred by denying the plea to the jurisdiction. In the second issue, the City contends it is immune from suit because its employee, Arrington, is entitled to official immunity.

Appellees assert it is undisputed that Arrington was a governmental employee in the course and scope of his employment operating a City-owned motor vehicle. They also assert that it was Arrington's negligence that proximately caused their damages. The City's immunity is waived for the personal injury and property damage proximately caused by the negligence, wrongful act, or omission of its employee, Arrington, if Arrington would be personally liable to appellees under

–6–

Texas law. *See* Civ. Prac. § 101.021(1)(B). The City argues that Arrington would not be liable to appellees under Texas law because he would have official immunity; therefore, the City asserts, its immunity was not waived.

Appellees argue official immunity only applies when a plaintiff seeks to impose personal liability on a governmental employee, citing *Kassen v. Hatley*, 887 S.W.2d 4 (Tex. 1994). Appellees argue that because they have not sued Arrington and are not seeking to impose personal liability against him, official immunity is moot and does not apply. Therefore, they argue, the City cannot use official immunity to prove Arrington would not be personally liable. However, *Kassen* does not hold that a governmental employer cannot use an employee's potential official immunity to assert the employee would not be personally liable and therefore the employer's immunity was not waived by section 101.021. *See id.* at 6 ("In this case we decide whether a doctor and nurse employed by a governmental entity were entitled to the defense of official immunity when sued individually for medical malpractice."). Moreover, this Court has held in a case where the governmental entity was the only defendant (the employee had been nonsuited pursuant to section 101.106), the employee's official immunity meant the governmental employer did not waive its immunity from vicarious liability for the employee's actions. *City of Dallas v. Brooks*, 349 S.W.3d 219, 224 (Tex. App.—Dallas 2011, no pet.) (citing *Clark*, 38 S.W.3d at 581 ("[w]hen official immunity shields a governmental employee from liability, sovereign immunity shields the governmental employer

–7–

from vicarious liability.")). Following *Brooks*, we conclude appellees' decision to sue only the City did not bar the City from attempting to prove its employee's official immunity in order to prove its governmental immunity was not waived under section 101.021.

We next consider whether the City proved Arrington had official immunity for the accident. "A governmental employee is entitled to official immunity: (1) for the performance of discretionary duties; (2) within the scope of the employee's authority; (3) provided the employee acts in good faith." *Clark*, 38 S.W.3d at 580. Appellees concede for purposes of this appeal that Arrington was performing a discretionary duty within the scope of his authority. Therefore, the only question is whether Arrington acted in good faith.

In determining official immunity, a court measures good faith under a standard of objective reasonableness without regard to the officer's subjective state of mind. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994). In *Wadewitz*, the supreme court explained the determination of whether an officer acted in good faith:

> [G]ood faith depends on how a reasonably prudent officer could have assessed both the *need* to which an officer responds and the *risks* of the officer's course of action, based on the officer's perception of the facts at the time of the event. The "need" aspect of the test refers to the urgency of the circumstances requiring police intervention. In the context of an emergency response, need is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of

action, if any, are available to achieve a comparable result. The "risk" aspect of good faith, on the other hand, refers to the countervailing public safety concerns: the nature and severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer.

*Wadewitz*, 951 S.W.2d at 467 (citation omitted). To conclusively establish official immunity, the government's evidence must address both the "need" and "risk" elements. *See id.* (affirming denial of employee's motion for summary judgment on defense of official immunity because employee's summary judgment proof did not address risk element). A police officer's own affidavit may establish good faith. *City of Dallas v. Rodriguez*, No. 05-19-00045-CV, 2020 WL 1486831, at *6 (Tex. App.—Dallas Mar. 27, 2020, no pet.) (mem. op.); *City of La Joya v. Herr*, 41 S.W.3d 755, 761 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.). An officer's good faith is not rebutted by evidence that he violated department policy. *Rodriguez*, 2020 WL 1486831, at *6.

Arrington testified in his affidavit that he had been a police officer for almost three years on the day of the accident and that during his career he had responded to thousands of emergency calls. On January 18, 2019, at 11:33 p.m., he was dispatched to assist another officer at a major freeway accident. The accident was in the HOV lanes on both the east- and west-bound sides of the LBJ freeway. The accident had scattered metal debris across the roadway. Arrington was one of the closest officers to the accident scene and was summoned to provide "cover" to other

–9–

officers and accident victims. He testified that after being dispatched, he entered the east-bound freeway with his lights, siren, and air horn activated and made his way across the outside lanes. The east-bound traffic yielded the right of way to him. When he got to the HOV lane but before he entered it, he saw a white car in the HOV lane was blocking his path. That car immediately got out of the HOV lane and out of Arrington's path. He testified, "I looked to the left to ensure that I could safely enter the HOV lane. Shortly after successfully entering the HOV lane, a black vehicle which I later learned was driven by Billy Ross, appeared suddenly to the left of my emergency vehicle and collided his right passenger side to my left driver's side."

In assessing the need for his action, which is the urgency of the circumstances requiring police intervention, Arrington testified in his affidavit that the incident to which he was dispatched was a major freeway accident, and that such accidents "need to be responded to immediately." Arrington's presence was necessary because "[f]ellow officers, the accident victims, and other motorists on the roadway could be in imminent danger due to the high likelihood of another accident occurring, or additional vehicle damage occurring due to debris on the roadway rendering those vehicles unsafe."

Arrington testified in his affidavit he weighed this need against the risk of crossing the freeway to get into the HOV lane and concluded the risk was "minimal."

Concerning the risk of crossing multiple lanes of the freeway to get to the HOV lane, he stated,

> I recognized that there was some risk in traversing across multiple lanes of traffic to get to the HOV lane on a congested highway. But, given that three lanes of traffic yielded the right of way to my emergency vehicle, that I looked to my left to ensure that I could safely enter the HOV lane, that I had proceeded slowly into the HOV lane, and that I had my emergency lights, siren, and air horn activated, I did not perceive that traversing across lanes of traffic to enter the HOV lane would cause any danger to any other driver close to my location.

He testified that after weighing the risk against the need:

> I believed in good faith that the need to get to the scene of the major accident outweighed the perceived minimal risk of an accident. . . . The potential danger posed by crossing lanes of traffic on the Freeway to enter the HOV lane was far less, considering the above factors, than the danger posed to the officers, accident victims, and other motorists on the roadway.

> . . . My actions were reasonable in light of the circumstances and any reasonably prudent police officer, under the same or similar circumstances, could have believed my actions were justified.

Arrington testified in his deposition that the incident was at nighttime, his vehicle's emergency lights were "super bright," and the siren and air horn were loud. "[Y]ou cannot miss a car decked out with LED red and blue lights flashing everywhere at nighttime." He testified the other cars stopped to let him onto the freeway. He testified that he entered the HOV lane at that point to try to close off the HOV lane and force traffic into the regular lanes before they reached the accident site.

Arrington's testimony showed the potential danger to other officers, the accident victims, and other motorists in the HOV lane was far greater if he was not present than the potential risk of accident he faced by crossing the freeway and getting in the HOV lane with his emergency lights flashing and the siren and air horn sounding. He testified the other traffic yielded to him. He testified that before moving into the HOV lane he looked to his left.

Appellees argue, "No reasonable and prudent police officer would find that the need for them to get to the scene of the major freeway accident *outweighs* the risk of an accident he would cause by entering . . . a lane of traffic without first ensuring that the lane was clear of oncoming traffic," and "any officer that finds that the need for them to get to the scene of an accident *does outweigh* the risk of injury from an auto collision caused by entering a lane of traffic occupied by oncoming traffic, <u>would not be acting in good faith</u>." However, Arrington testified he looked to his left before entering the HOV lane and believed he had cleared his path. According to the crash report, Ross told the investigator he did not see Arrington's vehicle until it was too late.

Appellees also argue that Arrington's decision that the potential danger from entering the HOV lane was less than the danger to the officers, accident victims and motoring public was not in good faith "because his actions caused an additional freeway traffic accident which created the same type of emergency to which he was responding." The mere fact that an accident occurred is not evidence that Arrington

–12–

did not act in good faith. Otherwise, no officer would be entitled to official immunity in a traffic accident when responding to an emergency situation.

Appellees also argue that the facts of this case "are almost identical to those" in *Wadewitz*. In that case, a police officer in the City of Waco's police department was investigating a burglary when he was dispatched to assist another officer on a theft in progress. *Wadewitz*, 951 S.W.2d at 465. To get to the location, the officer turned left crossing three lanes of traffic. A large truck was stopped in the second of the three lanes, partially blocking the officer's view of the third lane. As the officer entered the third lane, his car collided with the plaintiff's oncoming car. *Id.* The plaintiff sued the officer and the city, the officer moved for summary judgment on the ground of official immunity, and the city moved for summary judgment on the ground of governmental immunity based on the officer's official immunity. *Id.* at 465. Although the facts in *Wadewitz* have some similarity to the facts in the case before us, the supreme court did not base its decision on the facts of the accident. Instead, it concluded the officer and the City were not entitled to summary judgment on the officer's official immunity defense because their evidence did not present the "risks" part of the analysis. *Id.* at 467. "Therefore," the supreme court concluded, "the evidence does not conclusively establish that Wadewitz acted in good faith." *Id.* In this case, however, Arrington presented evidence of the risks his actions entailed and his analysis of those risks. *Wadewitz* is distinguishable.

–13–

We conclude the City presented evidence conclusively establishing that Arrington acted in good faith. Appellees presented no controverting evidence that Arrington's actions were in bad faith. Therefore, Arrington would have been entitled to official immunity and would not have been liable to appellees if they had sued him. Because he would not have been liable to appellees, the City's immunity from suit was not waived.

We sustain the City's first and second issues. We need not reach the City's third issue contending the City was immune from suit under sections 101.055(2) and 101.062 because Arrington was responding to an emergency.

## CONCLUSION

We reverse the trial court's order denying the City's plea to the jurisdiction, and we render judgment dismissing appellees' claims against the City for lack of jurisdiction.

210001f.p05

/Lana Myers//
LANA MYERS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS, Appellant

No. 05-21-00001-CV        V.

BILLY ROSS AND GINA
WASHINGTON, Appellees

On Appeal from the 191st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-17131.
Opinion delivered by Justice Myers.
Justices Partida-Kipness and Carlyle
participating.

In accordance with this Court's opinion of this date, the order of the trial court denying appellant City of Dallas's plea to the jurisdiction is **REVERSED** and judgment is **RENDERED** that:

Billy Ross and Gina Washington's claims against City of Dallas are **DISMISSED** for lack of jurisdiction.

It is **ORDERED** that appellant City of Dallas recover its costs of this appeal from appellees Billy Ross and Gina Washington.

Judgment entered this 22nd day of September, 2021.