Mark DROGIN, M.D.; David Edwards;
Rebecca Espinoza; Diana Thomas;
and, Edward L. Perez, Appellants,

v.

Tina CAMPBELL, Individually, and as In-
dependent Administratrix of The Estate
of Barbara Jean Campbell, Deceased;
Tammy Campbell, Terrie Campbell,
James Campbell, and Emma Cline, Ap-
pellees.

No. 04–96–00206–CV.

Court of Appeals of Texas,
San Antonio.

July 10, 1996.

Lionel J. Castro, Assistant Attorney Gen-
eral, Austin, for appellant.

E.B. Barretto, Law Offices of Sinkin &
Barretto, Larry Zinn, San Antonio, for appel-
lees.

Before STONE, GREEN and DUNCAN,
JJ.

DUNCAN, Justice.

Five state hospital employees seek inter-
locutory review of the trial court's denial of
their motions for summary judgment ground-
ed upon official immunity. For reasons the
stated below, we affirm.

## Facts

Barbara Jean Campbell, a forty-six year old woman with a long history of mental illness, was involuntarily committed to the San Antonio State Hospital (SASH) in October 1992 for homicidal and suicidal indications. This was Campbell's third involuntary commitment. While at SASH, Campbell's treatment team consisted of Dr. Drogin (psychiatrist), Dr. Edwards (psychologist), Edward Perez (nurse), and Diana Thomas (social worker). On November 2, 1992, Campbell's treatment team decided that Campbell should be furloughed on November 6 because she no longer posed a danger to herself or others.

On November 4, Campbell reported to Perez that another patient had tried to rape her. Perez noted the report in Campbell's chart and notified Edwards. However, neither Perez nor Edwards notified Drogin of the incident because, in their opinion, it was not medically important to do so. No member of the treatment team provided crisis intervention or made any adjustments to Campbell's furlough plan. Accordingly, on November 5, Campbell was furloughed. The discharge nurse was Rebecca Espinoza.

Two days after she was furloughed, Campbell fell or jumped off a bridge and died. Sometime thereafter, Campbell's surviving children and parents sued the hospital and appellants (the members of Campbell's treatment team and Espinoza). With respect to Drogin, the plaintiffs allege that he was negligent in his treatment of Campbell and, in particular, failing to order the proper diagnostic tests; failing to properly evaluate, diagnose and treat Campbell; failing to use proper and accepted techniques and treatment; failing to take a proper history; negligently misdiagnosing Campbell; negligently furloughing Campbell without proper supervision; and failing to properly supervise his medical staff. The plaintiffs further allege that Drogin is responsible for the acts and omissions of his medical staff. With respect to Edwards, the plaintiffs alleged that he was negligent in failing to provide crisis intervention for Campbell. With respect to Edwards, Thomas, Perez, and Espinoza, the plaintiffs allege they were negligent in failing to inform Drogin of the attempted rape. Finally, with respect to Thomas, the plaintiffs also allege that she was negligent in failing to inform Campbell's family of her impending furlough.

Appellants filed motions for summary judgment alleging official immunity, as well as immunity pursuant to the Texas Mental Health Code. *See* Tex. Health & Safety Code Ann. § 571.019(a) (Vernon 1992). The trial court denied the motions, and appellants appealed. *See* Tex. Civ. Prac. & Rem.Code § 51.014(5) (Vernon Supp.1996). The trial court stayed the proceedings below pending this appeal.

## Standard of Review

■ We review the trial court's order denying appellants' motions for summary judgment de novo. Accordingly, we must affirm the denial of summary judgment unless appellants conclusively establish each element of their affirmative defense of official immunity. *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex.1994). To do so, the appellants must demonstrate that there is no genuine issue of material fact, and they are entitled to judgment as a matter of law. *Kassen*, 887 S.W.2d at 8 n. 2. In deciding whether there is a disputed material fact issue, we take as true all evidence favoring the non-movants, indulging every reasonable inference from the evidence and resolving all doubts in their favor. *Kassen*, 887 S.W.2d at 8–9 n. 2.

## Official Immunity

■ Official immunity shields government officers and employees "from personal liability in performing discretionary duties in good faith with the scope of their authority." *Kassen*, 887 S.W.2d at 8. However, "government-employed medical personnel are not immune from tort liability if the character of the discretion they exercise is medical and not governmental." *Id.* at 11. In determining whether a particular act or omission entails the exercise of governmental or medical discretion, the supreme court has instructed that "[t]he focus must remain upon the facts of the individual case and the underlying policies promoted by official immunity.... [I]f governmental factors and concerns col-

ored the doctor's or nurse's discretion, policy considerations may still call for official immunity." *Id.* at 12. Conversely, if no governmental factor or concern colored the exercise of discretion, summary judgment is inappropriate. *Bossley v. Dallas County Mental Health & Mental Retardation*, No. 05–91–00284–CV, 1995 WL 73076 at * 8, —— S.W.2d ——, —— (Tex.App.—Dallas Feb.17, 1995, n.w.h.)(motion for rehearing pending).

 In this court, appellants argue that their duties with respect to Campbell were "unique to a government controlled and operated mental health and mental retardation center" because they had no choice but to treat Campbell and because they were required to release her once she no longer satisfied the admitting criteria. *See* Tex. Health & Safety Code Ann. § 571.004 (Vernon 1992). However, appellants' own summary judgment evidence unequivocally establishes—and appellants' counsel conceded during oral argument—that no governmental factor or concern colored any post-admission decision by any appellant. To the contrary, while each appellant testified that he or she had the authority to delay or reverse the decision to furlough Campbell if they thought it medically necessary, each also testified that Campbell was discharged because she no longer posed a danger to herself or others—a purely medical assessment. Thus, Drogin testified:

Q. Was your decision to let her go on furlough based solely on what you would consider to be sound medical judgment in the best interest of the patient?

A. Yes.

Q. Would you have made any different decisions about Ms. Campbell's care if you were treating her as a paying patient in a private hospital?

A. I would not have treated her any differently in terms of her psychiatric treatment if she were a patient in a private hospital. My—My medical treatment of her would have been—as a physician would have been the same.

\* \* \* \* \* \*

Q. Okay. But nobody made you furlough her? Nobody came to you and said, Look, she's been here too long -

A. No.

Q. - or We don't have enough beds -

A. No.

Q. - or We don't have enough resources -

A. No.

Q. - anything like that; is that correct?

A. That's correct.

Q. Okay. And that wasn't even a consideration in her furlough, was it?

A. No. No.

Similarly, in his affidavit, Drogin stated that "[b]ased on the presentation of Ms. Campbell during her admission, her progress, her denial of suicidal/homicidal ideation, her physical indications of increased appetite, sleeping better, she was appropriate for furlough." Likewise, the other appellants' affidavits plainly state that the decision to discharge Campbell arose out of their exercise of medical discretion. No governmental reason, such as lack of space or money or shortage of staff, in any way influenced these decisions.

 The appellants' own summary judgment proof also conclusively establishes that those on the treatment team who were aware of the attempted rape exercised medical, as opposed to governmental, discretion in deciding not to bring the matter to Drogin's attention. As Perez stated in his affidavit: "In my opinion, there was no reason at that time to specifically notify Drogin of what had occurred." Similarly, Edwards stated that he "believe[d] that a reasonably prudent clinical psychologist, under the same or similar circumstances could have believed that it was appropriate to carry out Ms. Campbell's furlough order without the necessity of informing Drogin of the 'attempted rape' notation in her record."

In sum, the appellants' own affidavits conclusively establish that "at all times relevant to this lawsuit," they exercised their medical discretion in treating Ms. Campbell. Accordingly, the appellants' point of error is overruled.

## SANCTIONS

At oral argument, counsel for appellees suggested that this appeal was taken "for delay and without sufficient cause" and that sanctions be imposed pursuant to Rule 84, TEX.R.APP. P. *See Campos v. Investment Management Properties, Inc.,* 917 S.W.2d 351, 356–58 (Tex.App.—San Antonio 1996, writ requested). In response, counsel for appellants defended the appeal as meritorious but again conceded that the governmental factors and concerns discussed above in no way colored the treatment team's decisions regarding Campbell.

These circumstances might well justify sanctions under Rule 84. However, we decline to impose sanctions in this case at this time, particularly in light of the absence of timely notice and an opportunity to be heard. We caution counsel, however, that the mere fact that an interlocutory appeal is statutorily authorized does not require that one be filed, nor does it immunize a frivolous appeal from sanctions, whether imposed pursuant to a motion or sua sponte. *See* TEX.R.APP. P. 84 (recognizing that sanctions may be imposed with or without a request).

## CONCLUSION

As the appellants stress in their affidavits, "at all times relevant to this lawsuit," they exercised their medical discretion in treating Ms. Campbell. There is literally no evidence in this record that any governmental factor or concern played a role in any act or omission forming a basis for this lawsuit. Accordingly, the order denying the appellants' motions for summary judgment is affirmed.