Affirmed and Opinion filed August 25, 2005









Affirmed and Opinion filed August 25, 2005.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00746-CV

____________

 

FRANK
MUSSEMANN, M.D., AMY PLUMMER, M.D., AND 

DANIEL HERSH, M.D., Appellants

 

V.

 

MERCEDES
VILLARREAL, AS NEXT FRIEND OF 

JUAN PABLO ELIZONDO, A MINOR, Appellee

_____________________________________________________________

 

On Appeal from the 129th District Court

Harris County, Texas

Trial Court Cause No. 02-12675

_____________________________________________________________

 

O P I N I O N

Appellants Frank Mussemann, M.D.,
Amy Plummer, M.D., and Daniel Hersh, M.D. appeal from the trial court=s denial
of their motion for summary judgment. 
After reviewing the record, we conclude that they have failed to
conclusively establish the affirmative defense of official immunity as a matter
of law, and we therefore affirm the trial court=s denial
of their motion for summary judgment.








I.  Factual and Procedural Background

Appellants
Frank Mussemann, M.D., Amy Plummer, M.D., and Daniel Hersh, M.D.  (hereinafter collectively referred to as the ADoctors@) were third-year
and fourth-year residents at Baylor College of Medicine, working rotations at
Ben Taub General Hospital (ABen Taub@), when
Mercedes Villarreal presented with complications late in pregnancy.  The Doctors assisted Villarreal with the
management of these complications and with the eventual caesarean birth of
Villarreal=s son.  Villarreal=s son was
born in distress and suffers from severe birth defects.  Appellee Mercedes Villarreal, as next friend
of her son Juan Pablo Elizondo, has sued the Doctors, alleging that they
negligently performed their duties. 
Although the Doctors dispute that they were negligent, they moved for
summary judgment based on the affirmative defense of official immunity.  The trial court denied the Doctors= motion,
and the Doctors have filed this interlocutory appeal, arguing that the summary-judgment
evidence conclusively establishes their entitlement to official immunity as a
matter of law.[1]


A.        Villarreal=s
Experience at Ben Taub

Villarreal is from Mexico.  She came to the United States when she was
about three months pregnant and began receiving prenatal care from the
Southwest Community Clinic, a public facility operated by the City of Houston.  Thereafter, she intermittently saw doctors at
Ben Taub=s
obstetric clinic, beginning in December 1994. 
When Villarreal was diagnosed as a high risk patient near the end of her
pregnancy, she was referred to Ben Taub=s High
Risk Obstetric Clinic for continued prenatal care and eventual delivery.  








Villarreal suffered from
gestational diabetes.  In addition, her
baby was in a breech position.  When the
medical providers at Ben Taub began managing her pregnancy, they first tried to
correct the baby=s breech
presentation by a procedure called a Aversion,@ which is
an external manipulation of fetal position. 
This procedure was not successful, so it became necessary to consider
delivery by caesarean section.  Given the
probable caesarean section, and the fact that gestational diabetes can
compromise fetal lung maturity, Villarreal was advised to undergo a
third-trimester amniocentesis to make sure the baby=s lungs
had matured sufficiently.

            On
April 20, 1995, Dr. Plummer performed the amniocentesis on Villarreal.
Afterwards, Dr. Plummer monitored the baby for five to ten minutes on
ultrasound equipment.  At this time, Dr.
Plummer did not monitor the baby using an electronic fetal monitor.  

Three days after the
amniocentesis, Villarreal came to Ben Taub complaining that she had not felt
her baby moving that day.  A nurse placed
her on an electronic fetal monitor, which showed that the fetal heart rate was
minimally reactive and needed investigation. 
A first-year resident supervised by Dr. Hersh evaluated Villarreal and
began a biophysical profile (ABPP@) of the
baby.  When the resident saw no evidence
of fetal movement, he contacted Dr. Hersh to continue the BPP.  Dr. Hersh completed the BPP, which
yielded abnormal results and showed that the baby had been motionless for the
entire examination.  According to Dr.
Hersh, these facts required an Aurgent@
caesarean section.  Dr. Hersh consulted
with his supervising resident, Dr. Mussemann, regarding this proposed course of
treatment, and Dr. Mussemann concurred.

During preparations for the
caesarean section, Villarreal had a contraction, and the fetal heart rate
further declined.  With this development,
Dr. Mussemann determined that a Astat@ or Aemergency@
caesarean section should be performed immediately.  Villarreal=s baby
was soon delivered by caesarean section. 
He was limp and pale, and tests revealed that he had severe anemia due
to a massive fetal-maternal hemorrhage, that is, a loss of the baby=s blood
into the mother=s
system.  After treatment in the neonatal
unit, the baby eventually was discharged. 
After the baby=s
discharge, medical providers determined that, among other things, he suffered
from severe global developmental delay and mental retardation.








B.        Villarreal=s Lawsuit
on Behalf of Her Son

Villarreal,
as next friend of her son, filed a medical-malpractice suit against the
Doctors.  In this suit, Villarreal
asserts the Doctors were negligent based on the following alleged acts and
omissions: 

!         Dr. Plummer=s performance of an amniocentesis that was
unnecessary and conducted improperly; 

!         Dr. Plummer=s failure to monitor the fetus after the
amniocentesis with an electronic fetal monitor, so that any adverse effect
could be identified and addressed; 

!         Dr. Hersh=s failure to properly supervise a first-year resident;


!         Dr. Hersh=s failure to promptly recognize an uncorrectable,
non-reactive fetal heart-rate pattern on the fetal-monitor strip; 

!         Dr. Hersh=s failure to consult more promptly with the
supervising resident, Dr. Mussemann, or an attending physician, when faced with
an uncorrectable, non-reactive fetal heart-rate pattern; 

!         Dr. Hersh=s performance of an unnecessary BPP of the fetus,
which delayed the caesarean section; 

!         Dr. Mussemann=s failure to properly
supervise Dr. Hersh; 

!         Dr. Mussemann=s failure to perform an Aemergency@ caesarean section, as
opposed to an Aurgent@ caesarean section, when
first consulted by Dr. Hersh;  

!         Dr. Mussemann=s choice of anesthesia for
performing the caesarean section; and

!         Dr. Mussemann=s failure
to consult more promptly with the attending physician.

C.        Official Immunity and the Nature of the Practice at Ben Taub








Although the Doctors dispute
Villarreal=s allegations of negligence, for
the purposes of this appeal, they rely on the defense of official
immunity.  Because Ben Taub is a public
hospital operated by the Harris County Hospital District, which provides
acute-care medical services to the indigent and low-income population of Harris
County, the Doctors contend that they are immune from liability for their
actions in treating Villarreal.

To support their position
regarding official immunity, the Doctors proffered summary-judgment evidence
regarding the nature of the practice at a large public hospital like Ben
Taub.  The Doctors claim that Ben Taub is
chronically strained by budgetary constraints and that it does not have access
to state-of-the-art equipment, an adequate nursing staff, or even sufficient
space to accommodate its extremely high patient load.  The Doctors also note that their practice is
characterized by higher-than-average workplace stress due to the combination of
a high patient load and inadequate resources. 
The Doctors allege that treating an indigent or low-income population
has its own complications, including frequent language barriers and incomplete
or misplaced medical records, with resulting uncertainty regarding a patient=s medical
history. 

The Doctors contend that these
and other factors complicate the treatment of the typical obstetric
patient.  Many obstetric patients have
had gaps in prenatal care and testing, and may have an uncertain date for the
beginning of pregnancy.  Due in part to
these problems, many of these patients either are or have become high risk and
present more complicated medical issues than do patients at private hospitals.  In addition, longer-than- average delays
sometimes complicate prenatal testing and procedures.  The Doctors claim that these and other
factors impacted their treatment of Villarreal.

Notwithstanding these
difficulties, Ben Taub=s
physicians are required to treat all patients who present themselves for
treatment, as long as Ben Taub routinely provides the type of treatment such
patients are seeking.  Because Ben Taub
provides obstetric care for both normal and high risk pregnancies, obstetric
patients such as Villarreal, who present themselves to Ben Taub=s High
Risk Obstetric Clinic, are routinely treated, irrespective of complications
they may have or risks of a poor outcome.








The Doctors moved for summary
judgment, claiming that these factors conclusively established their right to
official immunity.  The trial court
denied the motion for summary judgment. 
Appealing this ruling, the Doctors argue that they are entitled to
official immunity because they exercised governmental discretion, or medical
discretion Acolored by governmental factors
and concerns,@ when they treated Villarreal.  Alternatively, the Doctors contend that
public policy considerations require this court to re-evaluate the doctrine of
official immunity as it is applied to medical personnel under Kassen v.
Hatley, 887 S.W.2d 4 (Tex. 1994).

II.  Standard
of Review

We review a trial court=s denial
of summary judgment de novo.  See Joe
v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 156 (Tex. 2004).  Because the doctrine of official immunity is
an affirmative defense, to prevail on summary judgment, a movant must establish
conclusively each element of this affirmative defense.  Kassen v. Hatley, 887 S.W.2d 4, 8 (Tex.
1994).  To meet this burden, the Doctors
must demonstrate that there is no genuine issue of material fact and that they
are entitled to judgment as a matter of law. 
Id. at 8 n.2.  In
determining whether an issue of material fact exists, we take as true all
evidence favorable to the nonmovant and indulge all reasonable inferences in
the nonmovant=s favor.  Id. 

III.  Analysis

A.        Have the Doctors conclusively
established that they exercised governmental discretion?













Ordinarily, public officials must
show the following elements to establish a defense of official immunity: (1)
the performance of a discretionary function, (2) in good faith, and
(3) within the scope of the employee=s
authority.[2]  Kassen, 887 S.W.2d at 9.  In Kassen, the Texas Supreme Court
adopted the rule of official immunity from other states that requires
government-employed medical personnel[3]
who seek official immunity to prove that they are being sued for the exercise
of Agovernmental
discretion@ rather than Amedical
discretion.@ 
Id. at 11.  The Kassen
court agreed with cases from other states holding that governmental discretion,
which would entitle such medical personnel to immunity, refers to actions taken
in an administrative or policy-making capacity. 
Id. at 11 & n.7 (noting agreement with Henderson and Comley
cases); Henderson v. Bluemink, 511 F.2d 399, 403 & n.24 (D.C. Cir.
1974) (stating that governmental discretion, to which official immunity
applies, includes acts performed in an administrative capacity); Comley v.
Emanuel Lutheran Charity Bd., 582 P.2d 443, 451B52 (Or.
Ct. App. 1978) (holding doctor did not have immunity in suit alleging he
committed various acts of medical negligence in treating a patient and stating
that doctor=s alleged acts were not the
exercise of governmental discretion because they did not involve decisions
regarding public policy).  The Kassen
court also stated that it agreed with decisions from other states holding that
discretion exercised in the treatment of individual patients is medical
discretion not entitled to immunity.  Kassen, 887 S.W.2d at 11 & n.7 (noting
agreement with Womble, Cooper, and Protic cases); Womble
v. Singing River Hosp., 618 So. 2d 1252, 1262B65 (Miss.
1993) (stating that government-employed medical personnel have no immunity for
their decisions involving individual medical treatment but that they have
immunity for decisions regarding the formulation and implementation of public
policy), superseded by statute as stated in Sparks v. Kim, 701
So. 2d 1113, 1115 & n.2 (Miss. 1997); Cooper v. Bowers, 706 S.W.2d
542, 543 (Mo. Ct. App. 1986) (holding that a government-employed doctor does
not perform a governmental function by treating patients); Protic v. Castle
Co., 392 N.W.2d 119, 122 (Wis. Ct. App. 1986) (stating that providing
medical care to patients does not involve governmental policy and
decision-making that would entitle government-employed doctor to
immunity).  

To qualify for protection, the
discretion exercised need not be Auniquely
governmental.@  Kassen, 887 S.W.2d at 12.  To determine the character of the discretion
medical personnel exercised, we must examine the facts of each case and the
underlying policies promoted by official immunity.  Id. 
Our decision necessarily involves a balancing of individual rights and
the public interest.  Id.  The Kassen court declined to provide a
precise definition for determining when the acts of government-employed medical
personnel involve governmental discretion. 
Id. at 12. n.8.  However,
the Kassen court recommended that courts consider the following factors:

1.         the nature and importance of the function that the employee
is performing,

2.         the extent to which passing judgment on the exercise of
discretion by the employee will amount to passing judgment on the conduct of a
coordinate branch of government or an agency thereof,

3.         the extent to which the imposition of liability would impair
the employee=s free exercise of discretion,

4.         the extent to which financial responsibility will fall on the
employee,

5.         the likelihood that harm will result to the public if the
employee acts,

6.         the nature and seriousness of the type of harm that may be
produced, and

7.         the availability to the injured party of other remedies and
forms of relief.

Id. (citing Restatement (Second) of Torts ' 895D cmt. f (1977)).








In discussing the distinction
between governmental discretion and medical discretion, the Kassen court
indicated that government-employed medical personnel exercise governmental
discretion in the following circumstances: (1) when they exercise policy-making
or administrative responsibilities not shared by private-sector providers, and
(2) when they decide how to allocate a scarce pool of state resources among possible
recipients.  Kassen, 887 S.W.2d at
10.  On the other hand, the Kassen court
indicated that discretion exercised by government-employed medical personnel in
their treatment of patients is medical discretion not subject to immunity.  See id. at 10B11.  The Kassen court stated that, if
governmental factors and concerns colored the discretion of government-employed
medical personnel, policy considerations may call for immunity, even though
these personnel have duties and responsibilities that coincide with
private-sector providers.  Id. at
12. 

It is undisputed that the Doctors
exercised discretion; the issue on appeal is whether the trial court erred in
determining that the Doctors did not conclusively establish each element of
their official-immunity defense.  More
specifically, we must determine whether the trial court erred in ruling that
the Doctors did not conclusively establish that Villarreal is suing them for
exercising their governmental discretion. 









Villarreal alleges negligence
based on the need for a third-trimester amniocentesis, the performance of the
amniocentesis itself, and the need for monitoring afterwards.   All of these acts or omissions relate to a doctor=s
specialized knowledge, judgment, and discretion in treating a specific
patient.  The same is true for the
decisions involving Villarreal=s labor
and delivery.  What sort of tests to
perform and the interpretation of the test results each required a physician to
assess the situation and decide the appropriate course of action.  What sort of anesthesia to use during a
caesarean section and whether to perform the procedure on an Aurgent@ or an Aemergency@ basis
are exercises of medical discretion. 
Finally, supervising the medical decision-making of less-experienced
doctors, along with determining when to consult more-experienced physicians,
are the exercise of medical discretion.  See,
e.g., Drogin v. Campbell, 928 S.W.2d 205, 207 (Tex. App.CSan
Antonio 1996, no writ) (holding that a decision based on medical necessity
involved the exercise of medical discretion). Under the legal standard set
forth in Kassen, we conclude that Villarreal is suing the Doctors based
on their exercise of medical discretion rather than governmental discretion.  See id. (holding that employees of state
hospital did not have official immunity for their alleged negligence in
treating and releasing patient because they exercised medical discretion under Kassen);
Womble, 618 So. 2d at 1262B65
(holding that emergency-room doctors were not immune from malpractice action
against them because their treatment of the patient in question did not involve
formulating or implementing government policy); Cooper, 706 S.W.2d at
542B43
(holding that a prison doctor did not have immunity for discontinuing an inmate=s
medication because the doctor was treating a patient, which is not Aconduct
partaking of the essence of governing@)
(quotations omitted); Comley, 582 P.2d 443, 450B52
(holding doctor was not immune because his alleged negligence in treating
premature child did not involve governmental discretion); Protic, 392
N.W.2d at 122 (holding that doctor was not entitled to immunity because his
alleged negligence in treating patient did not involve governmental
decisionmaking).

The Doctors argue that they
exercised Agovernmental discretion@ in
treating Villarreal because they provided health care to the indigent, caring
for government patients with government resources in a government
facility.  These factors do not show that
the Doctors exercised governmental discretion under the Kassen legal
standard.  The Kassen court
indicated that discretion exercised by government-employed medical personnel in
their treatment of patients is medical discretion not subject to immunity.  Kassen, 887 S.W.2d at 10B11.  The facts of Kassen involved a
challenge to the decision-making of a third-year resident serving at a public
hospital.  Id. at 7.  The Kassen court concluded that,
because the challenged decision was motivated by Atherapeutic
considerations,@ the Aexercise
of discretion was medical only,@ and the
resident, though working at a public hospital, was Anot
entitled to official immunity.@  Id. at 12. 
Concluding that government doctors are entitled to immunity simply
because they practice medicine in the setting of a government hospital, under
more adverse conditions than private doctors, would be contrary to Kassen
and the cases cited therein.  See id.
at 9B12.

In addition, the Doctors have
developed a record of what they contend are Agovernmental
factors and concerns@ that
allegedly Acolored@ the
exercise of their discretion.  They
contend that these factors were not present in Kassen and that the
presence of these factors and concerns affected their medical discretion in a
manner that requires us to grant them immunity. 
We do not find the Doctors=
arguments persuasive.








The Doctors introduced evidence
regarding what sort of patient Villarreal was, claiming that the following
facts were governmental factors or concerns that colored their discretion: 

!         Villarreal had gaps in prenatal care and limited
availability of records.

!         Villarreal=s prenatal care was provided by different
providers at different locations.

!         Villarreal=s limited ability to speak English may have
created a language barrier.

!         The Doctors viewed Villarreal as a Anon-compliant@ patient who had a high
risk for a poor outcome.  

 

Although these issues may have influenced how
the Doctors treated Villarreal, none of the factors is governmental in
nature.  Instead, any patientCeven a
private patientCmay
present for treatment with factors like these, ultimately requiring a private
physician to make treatment decisions under less-than-perfect circumstances.  Cf. Borrego v. City of El Paso, 964
S.W.2d 954, 959 (Tex. App.CEl Paso
1998, pet. denied) (stating that decision to immobilize critical patient prior
to moving him from scene of accident was medical in nature and thus not
entitled to immunity). Even if these factors occur with more frequency in an
indigent or low-income population, this does not convert the Doctors= exercise
of medical discretion into governmental discretion.








The Doctors also introduced
evidence about the nature of public hospitals, noting that Ben Taub, like
similar institutions, suffers from budgetary constraints, limited equipment and
testing, the necessity of using residents to perform services, and the mandate
to accept all patients who present for treatment.  These problems, however, are the sort that
are likely to be present in most or all public hospitals.  To hold that these factors conclusively
establish a right to official immunity would eviscerate the Kassen legal
standard.  Indeed, as discussed, some of
these problems were either present or noted in Kassen itself.  See, e.g., Kassen, 887 S.W.2d at 10
(stating that Agovernment health care providers
have less latitude in choosing patients than their private-sector counterparts@); see
also Gross v. Innes, 930 S.W.2d 237, 241 (Tex. App.CDallas
1996) (stating that Athe fact
that [medical personnel] did not have the option to refuse treating [a patient]
is not a governmental factor coloring medical discretion in this case@), writ
dism=d w.o.j., 988
S.W.2d 727 (Tex. 1998). 

The Doctors argue that their care decisions were influenced
by the fact that resources, such as electronic fetal monitors, were limited,
and that some lab work, like analysis of the amniocentesis, had to be
outsourced.  These facts still fail to
establish that the Doctors exercised governmental discretion.  See, e.g., Gross, 930 S.W.2d at 241
(stating that Adeciding what equipment to use in
treating [patient] was an exercise of medical discretion@). The Kassen court indicated
that Athe need to allocate scarce state
hospital resources among potential patients@ is a Agovernmental concern.@ 
887 S.W.2d at 12.  In this case, however,
there is no summary-judgment evidence that the Doctors were involved in
the allocation of
hospital resources among patients or in the exercise of any other
administrative or policy-making discretion at Ben Taub.[4]








The Doctors also rely on a series
of cases granting immunity to other public servants, such as a paramedic, a
pathologist, a constable, and a mortician, to argue that doctors serving the
public are entitled to immunity.[5]  The facts in these cases, however, are
distinguishable from the present situation. 
Each case involved decision-making that implicated some aspect of public
safety at large, such as traffic safety or accident investigation or
management. The Doctors= actions
in this case, by contrast, do not directly relate to the safety of the public
at large.  They instead relate to the
health of a single individual and her unborn child, a circumstance that the
court in Kassen determined does not necessarily implicate the public interest.  See Kassen, 887 S.W.2d at 11 (stating Athe
exercise of medical discretion does not require the same protection as the
exercise of governmental discretion@); see
also Gross v. Innes, 988 S.W.2d 727, 730 (Tex. 1998) (holding that
paramedic=s emergency transportation was
distinguishable from exercise of medical discretion and thus did not give rise
to conflict jurisdiction).

Under the Kassen standard
and for the reasons stated above, we conclude the summary-judgment evidence
does not conclusively prove that Villarreal is suing the Doctors based on their
exercise of governmental discretion. 
Therefore, the Doctors did not conclusively establish each element of
the affirmative defense of official immunity. Accordingly, we overrule the
Doctors= first
issue.

B.        Is there a separate inquiry into whether
governmental factors and concerns colored the Doctors= exercise of medical
discretion?

The Doctors argue that the
conclusion that they exercised medical discretion does not end the inquiry
under Kassen.  The Doctors claim
they still may be entitled to immunity if they can show that their medical
discretion was Acolored
by governmental factors and concerns.@  They base this assertion on the following
language from Kassen:

We anticipate difficult cases
in which government-employed medical personnel will have duties and
responsibilities that coincide with private-sector providers.  In such cases, if governmental factors and
concerns colored the doctor=s or nurse=s discretion, policy
considerations may still call for official immunity.  Such decisions necessarily involve a
balancing of individual rights and the public interest.

Kassen, 887 S.W.2d at 12.








The Doctors assert that this
language from Kassen requires a separate inquiry into whether the
Doctors= exercise
of discretion, even if it was medical discretion, was colored by governmental
factors and concerns.  We disagree with
this reading of Kassen.  Just
before the above-quoted language, the Kassen opinion states, A[w]e hold
that government‑employed medical personnel are not immune from tort
liability if the character of the discretion they exercise is medical and not
governmental.@ 
Id. at 11.  An independent
inquiry into whether governmental factors and concerns colored the Doctors= medical
discretion would contradict this holding. 
Furthermore, the Kassen court cites cases from other states that
determine whether immunity applies based on whether the discretion in question
is medical or governmental.  Just after
the cited language upon which the Doctors rely to support an independent
inquiry, the Kassen court, in a footnote, lists the factors that courts
should consider in determining whether the discretion at issue is governmental
discretion.  See id. at 12 &
n.8.

In this context, we conclude that
the language upon which the Doctors rely does not prescribe a second inquiry
into whether governmental factors and concerns colored their medical
discretion.  Rather, this language
describes the determination of whether the discretion at issue was medical or
governmental and states that, if governmental factors and concerns colored this
discretion, policy considerations may call for a determination that the
discretion was governmental, even though the personnel in question have duties
and responsibilities that coincide with private-sector providers.  See id.  The summary-judgment evidence does not show
that Villarreal is suing the Doctors based on their exercise of any
administrative or policy-making discretion at Ben Taub.  Nor does the summary-judgment evidence show,
let alone conclusively prove, that the Doctors= alleged
acts and omissions were an exercise of discretion colored by governmental
factors and concerns.  Based on the Kassen
legal standard, we have determined that the discretion at issue is medical and
not governmental.  The Kassen
precedent does not require a second inquiry, as urged by the Doctors.[6]








Our construction of the Kassen
legal standard is supported by the fact that the Kassen  court did not conduct a separate inquiry into
whether governmental factors and concerns colored the medical discretion of the
doctor in question.  See id.  Further, most courts that have applied the Kassen
legal standard have not conducted such a separate inquiry.  See, e.g., City of El Paso v. Higginbotham,
993 S.W.2d 819, 824 (Tex. App.CEl Paso
1999, no pet.) (asking only whether paramedic=s
challenged action was governmental or related Ato the
proper course of medical treatment@); Borrego,
964 S.W.2d at 959 (determining only that AEMS
utilized its medical discretion@); Drogin,
928 S.W.2d at 207 (determining only that appellants Aexercised
their medical discretion@ in
providing treatment); Carrola v. Guillen, 935 S.W.2d 949, 953 (Tex. App.CSan
Antonio 1996, no writ) (stating Athe
summary judgment evidence does not show that governmental discretion played a
role in the decisions that form the basis of this lawsuit@); but
see Gross, 930 S.W.2d at 241B42
(treating Kassen as articulating two alternatives for showing
entitlement to official immunity).  

We conclude that, under Kassen,
there is no independent inquiry into whether governmental factors and concerns
colored the Doctors= medical
discretion.  The issue of whether
governmental factors and concerns colored the Doctors=
discretion is part of the determination as to whether Villarreal is suing the
Doctors based on their exercise of governmental discretion.

C.        Do
public policy concerns necessitate re-evaluation of the standard set forth by
the Texas Supreme Court in Kassen v. Hatley?

In their
second issue, the Doctors urge this court to re-evaluate the rule in Kassen.  The Doctors claim that applying Kassen
to government doctors is not fair and fails to take account of various public
policy concerns that support shielding public doctors from liability. Particularly,
the Doctors point to the cost of liability insurance and note that the threat
of liability will discourage able physicians and residents from serving in
public hospitals.  The Doctors further
claim that denying government physicians official immunity threatens the
viability of the public health care system in Texas.








The Texas Supreme Court already
has weighed these concerns and determined that, when balanced with individual
patients= rights,
an appropriate compromise is to grant immunity to government medical personnel
only when they exercise governmental, as opposed to medical, discretion.  As an intermediate appellate court, we are
not at liberty to re-evaluate the propriety of this rule or to refuse to apply
it to the facts of this case.  In re
K.M.S., 91 S.W.3d 331 (Tex. 2002) (courts of appeals are not free to
disregard pronouncements from Texas Supreme Court); Lofton v. Texas Brine
Corp., 777 S.W.2d 384, 386 (Tex. 1989). 
If the Doctors want to change the legal standard in Kassen, they
should address these arguments to the Texas Supreme Court. Furthermore, if, as
the Doctors contend, the practice of medicine in the public sector is
approaching a crisis, then the Doctors also have the ability to seek redress
from the Texas Legislature, which already has provided the medical profession
some statutory relief.[7]  We overrule the Doctors= second
issue.

IV.  Conclusion

For the
foregoing reasons, we conclude that the Doctors did not conclusively establish
that their allegedly negligent conduct occurred during the exercise of
governmental, as opposed to medical, discretion.  Therefore, the Doctors did not conclusively
prove each element of the affirmative defense of official immunity.  Accordingly, we overrule the Doctors= issues
and affirm the trial court=s order
denying summary judgment.

 

/s/        Kem Thompson Frost

Justice

 

Judgment rendered and Opinion filed August 25, 2005.

Panel consists of Justices Anderson, Frost, and Seymore.

 

 











[1]  We have
jurisdiction over this interlocutory appeal under section 51.014(a)(5) of the
Texas Civil Practice and Remedies Code.  See
Tex. Civ. Prac. & Rem. Code ' 51.014(a)(5) (Vernon Supp. 2005).





[2]  We note that
the only issue before this court is the Doctors=
entitlement to summary judgment based on their defense of common-law official
immunity.  There are no issues of
sovereign immunity or statutory immunity before us.





[3]  The Texas
Health and Safety Code provides that residents of supported medical schools are
employees of the State Afor the purposes of determining the liability, if any,
of the person for the person=s acts or omissions while engaged in the coordinated
or cooperative activities of the unit, school, or entity.@ Tex. Health
& Safety Code Ann. ' 312.007(a) (Vernon 2001).  It is not disputed that the Doctors were
residents at Baylor College of Medicine when they provided Villarreal treatment
or that Baylor College of Medicine was a supported medical school as defined by
the Texas Health and Safety Code.  See
Tex. Health & Safety Code Ann.
' 312.002(6).





[4]  Appellant
Plummer argues that an electronic fetal monitor was not available to her in the
High Risk Obstetric Clinic.  However, in
her affidavit, appellant Plummer also notes that she could have transferred
Villarreal to the Labor and Delivery Unit for further monitoring had
complications from the amniocentesis been apparent on the ultrasound.





[5]  See, e.g.
DeWitt v. Harris County, 904 S.W.2d 650, 651B54 (Tex.
1995) (recognizing that off-duty constable had official immunity arising from
clearing and investigating a traffic accident); Rivas v. City of Houston,
17 S.W.3d 23, 26B29 (Tex. App.CHouston
[14th Dist.] 2000, pet. denied) (holding paramedic was entitled to immunity in
suit regarding emergency transport of patient in ambulance); Guerrero v.
Tarrant County Mortician Servs. Co., 977 S.W.2d 829, 832B34 (Tex. App.CFort
Worth 1998, pet. denied) (holding mortician company who contracted with county
medical examiner to remove remains from scene of accident entitled to
immunity); Putthoff v. Ancrum, 934 S.W.2d 164, 169B70 (Tex. App.CFort
Worth 1996, writ denied) (holding pathologist investigating unexplained cause
of death entitled to immunity). 





[6]  Even if Kassen
did require such a second inquiry, the summary-judgment evidence does not show,
much less conclusively prove, that Villarreal is suing the Doctors based on
their exercise of medical discretion that was colored by governmental factors
and concerns. 





[7]  In 2003, Texas
Legislature provided some protection to physicians by, among other things,
limiting liability in health care liability claims.  See Tex.
Civ. Prac. & Rem. Ann. '' 74.301B.303 (Vernon 2004).