IN THE SUPREME COURT OF TEXAS
 
════════════
No. 07-0131
════════════
 
John Christopher Franka, M.D., and Nagakrishna 
Reddy, M.D., Petitioners,
 
v.
 
Stacey Velasquez and Saragosa Alaniz, both Individually 
and as next friends of their Minor Child, Saragosa 
Mario Alaniz, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Fourth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued September 
10, 2008
 
            
Justice Medina, joined by 
Justice Lehrmann, dissenting.
 
            
In Kassen v. Hatley, we held that government-employed medical 
personnel were not entitled to the defense of official immunity when sued 
individually for the negligent exercise of purely medical judgment. 887 S.W.2d 4, 11 (Tex. 1994). Recognizing that medical 
decisions were typically unrelated to governmental discretion, we concluded that 
public-sector patients should have the same rights as private-sector patients 
when only medical judgment was at issue. Id. 11–12. Today, the Court 
abandons that principle, not because Kassen was 
wrongly decided, but because the Legislature has amended section 101.106 of the 
Tort Claims Act. Tex. Civ. Prac. & Rem. Code § 
101.106. Because this amendment does not speak to the 
official immunity of physicians accused of malpractice and does not require that 
we abandon Kassen, I respectfully dissent.
I
            
The Texas Tort Claims Act[1], does not waive the state’s immunity 
generally for the medical malpractice of its doctors. Instead, it waives the 
state’s sovereign or governmental immunity for, among other things, personal injury “caused by a condition or use of 
tangible . . . property.” Tex. Civ. 
Prac. & Rem. Code § 
101.021(2). Texas courts have struggled with the meaning 
and application of the quoted phrase since the Act’s adoption over forty years 
ago. See Texas Dep’t of Criminal Justice v. Miller, 51 S.W.3d 583, 590 
(Tex. 2001) (Hecht, J. concurring) (lamenting that judicial decisions “have done 
so little to infuse the Act’s use-of-property standard with meaning that the 
task now appears hopeless”). Although the standard lacks clarity, it is clear 
that medical negligence will sometimes not involve the use of property. Consider 
the facts in this case.
            
The asserted medical malpractice concerns a brachial plexus injury to an 
infant during delivery. The brachial plexus is a network of nerves that conducts 
signals from the spine to the shoulder, arm, and hand. These nerves were 
allegedly damaged when one of the infant’s shoulders became stuck during 
delivery and was accidently broken.
            
The parents’ theory was that the doctors ignored numerous warning signs 
indicating the need for a Caesarean delivery. The parents supported their theory 
with an expert report that listed the risk factors presented in the case. The 
report concluded that the doctors had “departed from the standard of care by 
failing to recognize that [the mother and fetus] demonstrated these six 
significant risk factors for the development of shoulder dystocia leading to an improper attempt at vaginal delivery 
rather than a Caesarean delivery that would have avoided the shoulder fracture 
and brachial plexus nerve injury sustained at birth.”
            
The doctors moved to dismiss, contending that the parents should have 
sued their employer, UTHSC, rather than the doctors individually because a 
vacuum extractor was used during delivery. To invoke a waiver of governmental 
immunity conditioned upon a “use of property” there must be a causal link 
between the property’s use and the patient’s injury.[2] The court of appeals concluded that there 
was no such causal link here because neither the pleadings nor the evidence 
implicated the vacuum extractor as a cause of injury. 216 
S.W.3d at 411-13. The court observed that the progress notes, the expert 
report, and the deposition testimony of the two doctors established that the 
vacuum extractor was used only to deliver the infant’s head. Id. at 411. A number of additional maneuvers, 
involving only the doctors’ hands, were used after that to deliver the infant’s 
shoulders at which time the injury occurred. Id.
            
When a governmental employee causes injury, section 101.106 of the Tort 
Claims Act purports to give the injured person a choice of suing the government, 
or its employee, or both. Tex. Civ. 
Prac. & Rem. Code § 
101.106. I say purports because the Court holds that this 
provision is a sham; it does not actually provide the putative plaintiff any 
choice in the matter. The statute’s title and text indicate, however, that the 
Court is wrong. The statute plainly puts the plaintiff to an election[3] at the time of filing suit with different 
consequences following the various choices.
            
Although not pertinent to this appeal, the statute also covers the 
consequences of a settlement or judgment. Id. § 
101.106(c), (d). Before its amendment in 2003, section 101.106 applied 
exclusively to settlements and judgments and provided simply that a plaintiff 
could not sue the employee after a judgment or settlement with the government.[4] We characterized the employee’s right 
under the former provision as an immunity from 
liability. Dallas Cnty. Mental Health & Mental Retardation 
v. Bossley, 968 S.W.2d 339, 344 (Tex. 1997); see also Newman v. 
Obersteller, 960 S.W.2d 621, 622 (Tex. 1997). The 
2003 amendments have expanded the statute’s scope but have not changed its 
character. The statute continues to create immunity from liability but now 
includes decisions made at the time of filing suit in addition to settlements 
and judgments.
            
Under the current statute, a plaintiff who sues only the government is 
barred from subsequently suing the government’s employee “regarding the same 
subject matter.” Tex. Civ. Prac. & Rem. Code § 
101.106(a). The plaintiff may elect to sue both the 
government and its employee, but the statute grants the government the 
unconditional right to have its employee dismissed from the suit if the 
plaintiff makes that election. Id. § 101.106(e). 
If the plaintiff does not want to sue the government, the plaintiff may sue the 
employee individually in which case the statute bars the plaintiff from 
subsequently suing the government “regarding the same subject matter unless the 
governmental unit consents.” Id. § 101.106(b). 
Even when the plaintiff sues the employee individually, the employee may obtain 
his or her dismissal under the conditions set out in section 101.106(f).
            
Subpart (f) provides that the employee shall be dismissed when the suit 
“is based on conduct within the general scope of that employee’s employment and 
. . . could have been brought under this chapter against the governmental unit.” 
Id. § 101.106(f). There are therefore three 
conditions for the employee’s dismissal under subpart (f): (1) the employee must 
have been employed by a governmental unit at the time of the incident; (2) the 
suit must be based on conduct within the scope of that employment; and (3) the 
plaintiff must have been able to bring the claim against the governmental 
employer under this chapter. “Under this chapter” refers to chapter 101 of the 
Civil Practice and Remedies Code, commonly known as the Texas Tort Claims Act. 
Id. § 101.002. Although there is some question 
about the employment of one of the doctors in this case, the question as to both 
doctors is whether the plaintiffs’ medical malpractice action “could have been 
brought” against the governmental unit, UTHSC, under the Tort Claims Act.
II
            
The Court and I disagree about the meaning of the last condition—whether 
suit “could have been brought under this chapter against the governmental unit.” 
I would hold that this condition refers to those tort claims for which the 
government has consented to suit under the Tort Claims Act. The Court attributes 
a broader meaning to the phrase, indicating that it includes all tort claims 
filed against a governmental employee individually without regard to whether the 
government has consented to be sued.
            
The Court reasons that because it is possible to sue the government for 
medical malpractice under the Tort Claims Act, albeit under limited 
circumstances, plaintiffs must sue the government, instead of their doctors 
individually, even when those limited circumstances do not exist. In the Court’s 
view, the statute is not about giving the plaintiff the right to choose the 
appropriate defendant but rather about making the government the defendant in 
all tort cases arising out of its employees’ conduct. The Court finds it 
immaterial that the plaintiffs filed their tort claim against the doctors 
individually, did not seek to join the government, and presumably do not believe 
they have an actionable tort claim against the government because governmental 
immunity has not been waived as to their claim. By ignoring the plaintiffs’ 
election and the reasons for it, the Court effectively reads the “could have 
been brought” condition out of the statute, holding instead that plaintiffs may 
sue only the government for the medical malpractice of its publicly-employed 
physicians. “Whatever merits this holding may have as a rule of law do not 
include fidelity to language and precedent.” Kerrville 
State Hosp. v. Fernandez, 28 S.W.3d 1, 14 (Tex. 2000) (Hecht, J. 
dissenting.)
            
The Attorney General, as Amicus Curiae in this case, shares my concern 
about the Court’s construction of the statute. He appropriately notes that the 
phrase “could have been brought” is unique to subpart (f). In contrast, 
references to the filing of suit are made repeatedly throughout section 101.106. 
See, e.g., Tex. Civ. Prac. & Rem. 
Code § 101.106 (a), (b), (e), 
(f). The Attorney General submits that the Legislature 
purposefully chose the term “brought” rather than “filed” to indicate a 
substantive distinction from the mere physical process reflected in the 
introductory clause of subpart (f) (“[i]f a suit is 
filed”) and the similar use of the term “filing” or “filed” in subparts (a), 
(b), and (e). The Attorney General further submits that the Legislature intended 
for the phrase “could have been brought” to mean something different than could 
have been filed. To equate “brought” with “filed”, argues the Amicus, is to 
render subpart (f)’s principle condition superfluous. Anyone can physically file 
a claim against the government, but not every claim filed against the government 
is actionable. The Attorney General concludes that the “could have been brought” 
condition can only refer to actionable claims against the government, that is, 
tort claims for which the government has consented to be sued.
            
I agree that the phrase “could have been brought” refers to actionable 
claims against the government. Unlike the Court, I believe that the “Election of 
Remedies” provision puts the plaintiff to an election at the suit’s outset as 
its title suggests. And although the statute seeks to shape that election, it 
does not prohibit plaintiffs from suing governmental employees in their 
individual capacity.
            
When a plaintiff elects to sue only the governmental 
employee as in this case, subparts (b) and (f) are implicated by the plaintiff’s 
choice. Tex. Civ. Prac. & Rem. Code §§ 101.106(b), 
(f). Subpart (b) binds the plaintiffs to their election and 
bars them from suing the government regarding the same subject matter. Id. §101.106(b). Subpart (b), however, excepts from its bar certain claims for which the government 
has given its consent, and subpart (f) explains the procedure to obtain this 
exception. Under subpart (f), the plaintiff is given a limited time to 
reconsider its suit against the employee and decide anew whether the government 
should have been sued instead. If the government has consented to suit, the 
plaintiff is well-advised to substitute the government for two reasons. First, 
the plaintiff cannot prevail on its claim against the employee if the 
plaintiff’s suit “could have been brought against” the government. Id. § 101.106(f). And second, the plaintiff cannot sue 
the government under subpart (f)’s exception if the claim against the employee 
is not promptly dismissed.[5] Id.
            
Subpart (f)’s “could have been brought” condition refers back to subpart 
(b)’s requirement of government consent. A suit that “could have been brought” 
against the government then is one for which the government has consented to be 
sued. Together subparts (b) and (f) require proof of the government’s consent to 
suit as a condition for the employee’s dismissal.
            
The government consents to suit “through the Constitution and state 
laws.” Mission Consol. Indep. Sch. Dist. v. Garcia, 253 S.W.3d 
653, 660 (Tex. 2008). The Tort Claims Act is one such law, 
providing consent for certain tort claims involving the operation of 
automobiles, the condition or use of property, and premises liability. Tex. Civ. Prac. & Rem. 
Code §§ 101.021, 
101.022. The government, however, has not specifically 
consented to be financially responsible for the medical malpractice of its 
doctors.
            
A publicly-employed doctor, who is sued individually for malpractice but 
seeks to obtain his or her dismissal under subpart (f), must therefore establish 
the government’s consent to be sued for the specific conduct at issue. If this 
cannot be established, then the government has not consented to suit, and the 
plaintiff’s claim against the employee individually must proceed. Subpart (b) 
requires nothing less. See Tex. 
Civ. Prac. & Rem. Code 
§ 101.106(b) (describing the suit against the employee as an “irrevocable 
election” that “immediately and forever bars” suit against the government unless 
it “consents”).
            
The trial court therefore correctly denied the motion to dismiss because 
under the present record the doctors did not establish the government’s 
consent.
III
            
The Court maintains, however, that requiring the doctors to prove the 
government’s consent as a condition to dismissal under subpart (f) would be 
inconsistent with a recent case in which we applied another part of the statute. 
See Mission Consol. Indep. Sch. Dist., 
253 S.W.3d at 658-60 (applying § 101.106 (e)). I fail to see the inconsistency. 
Mission involved subpart (e), rather than (f), because the plaintiffs 
filed suit against the government and its employees. Because the respective 
subparts apply to distinctly different circumstances, there is no conflict.
            
In Mission, three terminated school district employees sued the 
district and its superintendent for wrongful termination and various common law 
claims that did not fit under the Tort Claims Act’s limited waiver of immunity. 
Id. at 655. One issue in the case concerned the 
application of section 101.106(e). The court of appeals concluded that the 
section did not apply because none of the plaintiffs’ claims fit within the Tort 
Claims Act’s waiver of immunity. The court reasoned that none of the claims 
were, in the words of the statute,“under this chapter.” Id. at 
658.
            
We disagreed, observing that any tort claim against the government, even 
those for which immunity had not been waived, falls “under this chapter” because 
the Tort Claims Act is the only means to sue the government for a tort:
Because 
the Tort Claims Act is the only, albeit limited, avenue for common-law recovery 
against the government, all tort theories alleged against a governmental unit, 
whether it is sued alone or together with its employees, are assumed to be 
“under [the Tort Claims Act]” for purposes of section 101.106.
 
Id. at 659. Mission then merely followed the 
rule that a tort claim against the government is “under” the Act even when the 
Act does not waive immunity.
            
This rule has never been extended to tort suits against government 
employees individually, but the Court submits that the circumstances are similar 
enough that it should be. I disagree. The circumstances are not similar, and the 
statute treats each situation differently.
            
Subpart (e) grants the government an unconditional right to have its 
employee dismissed from the suit when the plaintiff elects to sue both the 
government and its employee. Contrast that with the conditions attached to the 
employee’s motion to dismiss under subpart (f). Clearly, the government’s burden 
under (e) is much different.
            
When a plaintiff sues both the government and its employees under (e), 
the employees have been joined in their official capacity as a matter of law, 
and the government has the right to have them dismissed. When government 
employees are sued individually under subpart (f), however, their status is a 
question of fact. In this instance, the employees themselves must establish 
their official capacity by proving, among other things, that suit could have 
been brought against their employer. If the employees cannot carry this burden, 
the suit against them in their individual capacity must proceed. In contrast, 
subpart (e) imposes no burden on the government to demonstrate that suit could 
have been brought against it under the Tort Claims Act for a simple reason: the 
plaintiff has already brought suit against the government.
            
The statute therefore treats employees sued individually differently than 
it does employees sued together with the government. The Tort Claims Act applies 
as a legal matter under subpart (e) because the government has been sued, but 
its application under subpart (f) depends on factual proof. The burden of that 
proof must fall on the employee, the party who must move to dismiss the case 
under subpart (f).
            
The statute carefully distinguishes between suits against the government 
and suits against government employees individually. When referring to suits 
filed or brought against the government the statute inserts the phrase “under 
this chapter” but when referring to suits against the employee individually the 
phrase is omitted. Compare Tex. 
Civ. Prac. & Rem. Code §§ 101.106(a),[6] (c),[7] & (e)[8] with id. §§ 101.106(b),[9] (d),[10] & (f).[11] Although “under this chapter” appears in 
subpart (f) when referring to the possibility of a suit against the government, 
the phrase is not used to describe the suit actually filed against the employee 
individually. See id. § 101.106(f) (“If suit is filed against an employee 
of a governmental unit based on conduct . . . and if it could have been brought 
under this chapter against the governmental unit . . .”). Suits against 
government employees individually are not “under this chapter” because a 
plaintiff does not need the government’s consent to seek a personal liability 
judgment against an individual. Because subparts (e) and (f) apply under 
different circumstances, our decision in Mission is in my view not 
particularly relevant to the decision in this case.
IV
            
I further disagree with the Court’s principal assumption that the 2003 
amendments were intended to overrule our decision in Kassen v. Hatley. 
The case has no apparent connection to these amendments. Kassen is not mentioned in any floor debate, bill 
analysis, or other piece of legislative history. Ordinarily when the Legislature 
intends for legislation to supercede one of our 
decisions, it will at least mention the object of its disagreement with us.
            
The only support the Court can muster for its unfounded assumption is a 
law review article, published two years after the amendment and authored by a 
private party, whom the Court generously describes as a “participant in the 
legislative process.” ___ S.W.3d at ___. We have 
repeatedly expressed “our consistent view that ‘[e]xplanations produced, after the fact, by individual 
legislators are not statutory history, and can provide little guidance as to 
what the legislature collectively intended.’” Entergy Gulf States, Inc. v. 
Summers, 282 S.W.3d 433, 444 (Tex. 2009) (quoting In re Doe, 19 
S.W.3d 346, 352 (Tex. 2000) (citations and quotations omitted). In this 
particular case, the supposition of a private observer apparently carries more 
weight. If the Legislature intended for this legislation to prohibit medical 
malpractice claims against publicly-employed physicians, it has done a masterful 
job of concealing that intent.
            
Because the law review article, on which the Court relies, is not 
particularly convincing, the Court offers another purpose for the legislation. 
The Court suggests that the 2003 amendment may have been intended to conform the Texas Tort Claims Act to the Federal Tort Claims 
Act. More specifically, the Court imagines that the 2003 amendment to section 
101.106, commonly known as the “Election of Remedies” provision, is Texas’ 
version of the Federal Employees Liability Reform and Tort Compensation Act, 
commonly known as the Westfall Act. Again, evidence to support its thesis is 
non-existent.
            
One need only compare the language of the respective bills to reveal the 
utter folly of this notion. The Westfall Act provides that the remedy provided 
by the Federal Tort Claims Act for injury, property loss, or death “resulting 
from the negligent or wrongful act or omission of any employee of the Government 
while acting within the scope of his office or employment is exclusive of 
any other civil action” and expressly “preclude[s]” any other action 
“relating to the same subject matter against the employee or the employee’s 
estate.” See ___ S.W.3d at ___ n.69 (quoting the Westfall Act, 28 U.S.C. 
§ 2679(b)(1) (emphasis added). In contrast to the 
exclusive and preclusive nature of the Westfall Act, section 101.106 ostensibly 
provides a choice of remedies.
            
In lieu of examining section 101.106’s language, the Court assumes that 
the Texas Tort Claims Act should be like the federal act. There are, however, 
significant differences between the two. For instance, the Federal Tort Claims 
Act does not condition the waiver of governmental immunity on the use of 
automobiles or the condition or use of real or personal property, as does Texas, 
but instead broadly permits persons to sue the United States in federal court 
for money damages
for injury 
or loss of property, or personal injury or death caused by the negligent or 
wrongful act or omission of any employee of the Government while acting within 
the scope of his office or employment, under circumstances where the United 
States, if a private person, would be liable to the claimant in accordance with 
the law of the place where the act or omission occurred.
 
28 U.S.C. § 
1346(b)(1). The federal act thus generally waives 
governmental immunity for the negligence of its employees, which would include 
medical malpractice. There is no possibility for the 
disconnect between the doctor’s liability and that of the government 
employer as under Texas law. This difference reasonably explains why our 
Legislature chose, when amending our Act, to require proof of the government’s 
consent as a condition for the dismissal of the plaintiff’s otherwise 
actionable, common law claim against the doctor individually.
            
Enamored more with the federal act than our own, the Court has chosen to 
conform section 101.106 to the federal scheme. Instead 
of six subparts, dealing with different combinations of defendants and the 
possibilities of settlement or judgment, the Court concludes that the 
Legislature intended simply this: If suit is filed against an employee of a 
governmental unit based on conduct within the general scope of that employee’s 
employment, the suit shall be dismissed on the employee’s motion and the 
governmental unit substituted as the defendant. Because the Westfall Act 
precludes suit against government employees, the Court concludes our now 
misnamed election-of-remedies provision should do the same.
            
Section 101.106’s language reveals, however, that our Legislature did not 
intend to mimic the Westfall Act. While the Legislature intended to encourage 
suits against the government in lieu of actions against government employees, 
section 101.106 does not compel it. Instead, it requires that plaintiffs choose 
their defendants wisely or suffer the consequences. Subpart (f) is the 
centerpiece of the scheme, creating a new immunity or “official capacity” 
defense for employees who can establish that the government should be, or should 
have been, the defendant.
            
This “official capacity” defense should not be confused with the common 
law doctrine of official immunity. Official capacity as used in this statute is 
shorthand for the conduct of a government employee meeting section 101.106(f)’s 
conditions: a suit “based on conduct within the general scope of that employee’s 
employment [that] could have been brought . . . against the governmental unit[.]” Tex. Civ. 
Prac. & Rem. Code § 
101.106(f). Official immunity, on the other hand, “protects 
government officers from personal liability in performing discretionary duties 
in good faith within the scope of their authority.” Kassen, 887 S.W.2d at 8. 
Government medical personnel, such as the doctors here, enjoy immunity from 
liability when exercising their governmental discretion, but this immunity does 
not extend to medical discretion. Id. at 11–12. The exercise of medical 
discretion, however, does not disqualify doctors from being employees of a 
governmental unit for purposes of the “official capacity” defense extended under 
section 101.106(f). Murk v. Scheele, 120 S.W.3d 865, 
867 (Tex. 2003) (per curiam).
            
To establish this defense, the doctors had to prove that: (1) the suit 
against them was “based on conduct within the general scope of that employee’s 
employment” and (2) the suit “could have been brought under [the Tort Claims 
Act] against the governmental unit[.]” Tex. Civ. Prac. & Rem. 
Code § 101.106(f). 
Substituting the federal scheme for our Legislature’s, the Court reads the 
“could have been brought” condition out of the statute or, in the words of our 
Attorney General, renders the condition “superfluous.”
            
Statutory language should not be read as pointless if it is reasonably 
susceptible of another construction. City of LaPorte v. Barfield, 898 S.W.2d 288, 292 (Tex. 
1995). Moreover, when construing a statute, we are to consider the law’s 
objective and the consequences of a particular construction. Tex. Dep’t of 
Transp. v. City of Sunset Valley, 146 S.W.3d 637,642 (Tex. 2004) (citing 
Tex. Gov’t Code § 311.023(1), (5)). Consider 
the consequences of the Court’s interpretation—that “could have been brought” 
refers to nothing more than the physical act of filing suit.
            
Under that view, the statute nonsensically requires the plaintiff to 
bring a claim over which the court lacks subject matter jurisdiction. See, e.g., Harris Cnty. 
v. Sykes, 136 S.W.3d 635, 638 (Tex. 2004) (noting that sovereign immunity 
“defeats a trial court’s subject matter jurisdiction unless the state expressly 
consents to suit”). That suit “could” actually be brought against the government 
implies a legal possibility, but it is not possible to sue the government 
without its consent. Worse yet, the claimant is 
compelled to dismiss an actionable medical malpractice claim against his or her 
doctor for the non-existent claim against the government. If this were to occur, 
one might reasonably question the constitutionality of subpart (f), as applied, 
under our Open Courts provision. Tex. 
Const. 
art. I § 13. We presume, however, 
that the Legislature intended to comply with the state and federal 
constitutions, Tex. Gov’t Code § 
311.021(1), and “we are obligated to avoid constitutional problems if possible.” 
Brooks v. Northglen Ass’n, 141 S.W.3d 158, 169 (Tex. 2004). The 
Court’s opinion ignores these rules of statutory construction.
            
V
            
Finally, the Court justifies its misconstruction of the statute by 
suggesting that it would create perverse incentives, conflicts of interest, or 
opportunities for gamesmanship if the employee were required to establish the 
government’s consent to be sued as a condition for dismissal. As to its 
gamesmanship charge, the Court suggests that the government might be able to 
defeat the plaintiff’s claim against its employee by merely stipulating to the 
waiver of governmental immunity after it is too late for the plaintiff to sue 
under the Tort Claims Act. This is hardly a legitimate concern. The state’s 
immunity is waived “through the Constitution and state laws,” not by the 
stipulations of its functionaries. See Mission, 253 
S.W.3d at 660. Even if UTHSC were willing to stipulate that the doctor’s 
use of the vacuum extractor caused the infant’s brachial plexus injury, a court 
would not be required to accept its self-serving declaration as fact. That the 
Court would even consider this a possibility underscores its misunderstanding of 
the statute and its imagined “perverse” effects.
            
What could possibly be more perverse than the Court’s application of this 
statute? Under the Court’s view, the plaintiffs must give up their common law 
medical malpractice claim against the doctors for a new suit against the 
government, a suit which in all likelihood will be dismissed for want of 
jurisdiction. Since the plaintiffs have not pled a cognizable claim under the 
Tort Claims Act, why would the government not file a plea to the 
jurisdiction?
            
Contrary to the Court’s concern, section 101.106 does not foster conflict 
between the government and its employee because it compels the plaintiff to 
choose the defendant at the beginning of the case. The plaintiff may sue the 
government, the government’s employee, or both with different consequences 
attaching to the various elections. When the plaintiff chooses to sue only the 
employee, subpart (b) bars the plaintiff from suing the governmental unit 
“regarding the same subject matter unless the governmental unit consents.” Tex. Civ. Prac. & Rem. 
Code § 101.106(b). 
Although ostensibly barred under (b), subpart (f) reopens the issue of the 
government’s consent, providing a new opportunity for the plaintiff to sue the 
government. Id. § 101.106(f). Subpart (f) 
therefore gives the plaintiff a second chance to sue the government, but it only 
gives the plaintiff thirty days to make that decision.[12] Id.
            
The plaintiffs here have elected to stand on their suit against the 
doctors and thus are now barred from suing the government. Id. § 101.106(b). If the doctors can prove that the 
Tort Claims Act would have waived the government’s immunity but for the plaintiffs election to sue them individually (that suit 
“could have been brought . . . against the governmental unit”), the doctors will 
establish their right to be dismissed, but not their employer’s liability. Id. § 101.106(f). The Court’s imagined conflict of 
interest does not exist because subpart (b) “bars any suit or recovery by the 
plaintiff against the governmental unit[.]” Id. § 101.106(b). Under these circumstances, section 
101.106(f) merely provides the employees with an 
immunity from liability under its “official capacity” defense.
            
The Court and I agree that the employee may establish a defense or 
immunity under section 101.106’s terms, but we disagree on what those terms 
entail. In the Court’s view, all that is required for the employee’s dismissal 
under subpart (f) is proof of the doctors’ employment status and conduct within 
the scope of that employment. One of the doctors has supplied this proof so I am 
somewhat puzzled by the Court’s decision to remand the claim against him for 
further proceedings. The statute gives the plaintiff only thirty days to dismiss 
the employee and substitute the government. Since the time for suing the 
government has passed, and the plaintiff cannot, according to the Court, sue the 
employee, what remains to be done? All that occurs to me is that a remand 
affords the plaintiffs an opportunity to raise any constitutional questions 
regarding the application of this statute before dismissal. I agree they should 
have that opportunity, but they would not need it, if the Court merely applied 
section 101.106 according to its terms.
* 
* * * *
            
I recognize that it is our responsibility to accept the Legislature’s 
intent even when that intent is to overrule one of our previous opinions. Leos v. State Emp. Workers’ Comp. Div., 734 S.W.2d 341, 343 
(Tex. 1987). But we should not loosely ascribe such intent to legislation 
simply to avoid questions of stare decisis. If 
a majority of the Court now feels that the distinction drawn in Kassen between government and medical discretion was 
in error, we should address the matter directly rather than engage in a 
distortion of legislative intent.
            
When we construe a statute, our primary goal is to ascertain and give 
effect to the Legislature’s intent. Hernandez v. Ebrom, 289 S.W.3d 316, 318 (Tex. 2009). When we 
can, we rely on the primary source of that intent, the language of the statute. 
Phillips v. Bramlett, 288 
S.W.3d 876, 880 (Tex. 2009). The statutory text, title and design of 
section 101.106 plainly put the plaintiff to an election of remedies. Because 
the Court’s interpretation takes that election away, requiring the plaintiff to 
sue only the government, I respectfully dissent. I would affirm the court of 
appeals’ judgment.
 
                                                                        
 ______________________________
                                                                        
 David M. Medina
                                                                        
 Justice
 
 
 
OPINION DELIVERED: January 21, 
2011







[1] 
The Tort Claims Act waives the state’s sovereign 
immunity “for certain tort claim involving automobiles, premises defects, or the 
condition or use of property.” Stephen F. Austin State Univ. v. Flynn, 
228 S.W.3d 653, 657 (Tex. 2007); see also Tex. Civ. Prac. & Rem. Code §§ 
101.001(3)(A)-(B), 101.021, 101.022, 
101.025.

[2] 
See Tex. Natural Resource & Conservation 
Comm’n v. White, 46 S.W.3d. 864, 868, 869 (Tex. 2001) (property’s use 
“must have actually caused the injury”); Dallas Cnty. Mental Health & Mental Retardation v. Bossley, 
968 S.W.2d 339, 344 (Tex. 1997) (“personal injury or death must be proximately 
caused by a condition or use of tangible personal or real 
property”).

[3] § 101.106. 
Election of Remedies
 
(a) The filing of a suit under this chapter against a 
governmental unit constitutes an irrevocable election by the plaintiff and 
immediately and forever bars any suit or recovery by the plaintiff against any 
individual employee of the governmental unit regarding the same subject 
matter.
 
(b) The filing of a suit against any employee of a 
governmental unit constitutes an irrevocable election by the plaintiff and 
immediately and forever bars any suit or recovery by the plaintiff against the 
governmental unit regarding the same subject matter unless the governmental unit 
consents.
 
(c) The settlement of a claim arising under this chapter 
shall immediately and forever bar the claimant from any suit against or recovery 
from any employee of the same governmental unit regarding the same subject 
matter.
 
(d) A judgment against an employee of a governmental 
unit shall immediately and forever bar the party obtaining the judgment from any 
suit against or recovery from the governmental unit.
 
(e) If a suit is filed under this chapter against both a 
governmental unit and any of its employees, the employees shall immediately be 
dismissed on the filing of a motion by the governmental unit.
 
(f) If a suit is filed against an employee of a 
governmental unit based on conduct within the general scope of that employee’s 
employment and if it could have been brought under this chapter against the 
governmental unit, the suit is considered to be against the employee in the 
employee’s official capacity only. On the employee's motion, the suit against 
the employee shall be dismissed unless the plaintiff files amended pleadings 
dismissing the employee and naming the governmental unit as defendant on or 
before the 30th day after the date the motion is filed.
 
Tex. Civ. 
Prac. & Rem. Code § 
101.106.

[4] 
The former provision, titled, “Employees Not 
Liable after Settlement or Judgment,” provided that “[a] judgment in an action 
or a settlement of a claim under [the Tort Claims Act] bars any action involving 
the same subject matter by the claimant against the employee of the governmental 
unit whose action or omission gave rise to the claim.” See id. § 101.106 
(1997) (amended by Act of June 2, 2003, 78th Leg., RS, ch. 204, § 11.05, 2003 Tex. Gen. Laws 886).

[5] 
If the plaintiff does not dismiss the case against 
the employee within thirty days of the employee’s motion under subpart (f), 
subpart (b) will bar any subsequent action against the government. Tex. Civ. Prac. & Rem. 
Code § 101.106(b), 
(f).

[6] 
“The filing of a suit under this chapter against a 
governmental unit constitutes an irrevocable election . . .”

[7] 
“The settlement of a claim arising under this 
chapter shall immediately and forever bar the claimant from any suit against or 
recovery from any employee . . .”

[8] 
“If a suit is filed under this chapter against 
both a governmental unit and any of its employees . . .”

[9] 
“The filing of a suit against any employee of a 
governmental unit constitutes an irrevocable election . . .”

[10] “A judgment 
against an employee of a governmental unit shall immediately and forever bar . . 
.”

[11] “If a suit is 
filed against an employee of a governmental unit based on conduct . . 
.”

[12] Under § 
101.106(b), a plaintiff who sues an employee cannot thereafter sue the 
governmental employer without its consent. The government consents to its 
substitution as defendant under § 101.106(f) but that consent terminates 30 days 
after the filing of the employee’s motion to 
dismiss.